Slip Op. 10-85

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
-------------------------------------------------------x
CHANGZHOU WUJIN FINE CHEMICAL      :
FACTORY CO., LTD. and JIANGSU      :
JIANGHAI CHEMICAL GROUP, LTD.,     :
                                   :
          Plaintiffs,              :
                                   :
     v.                            :
                                   :
UNITED STATES,                     :
                                   :
          Defendant,               :
                                   :
     and                           :
                                   :
COMPASS CHEMICAL                   :
INTERNATIONAL, LLC,                :
                                   :
          Defendant-Intervenor.    :
-------------------------------------------------------x
```

**Before: Judith M. Barzilay, Judge**
**Consol. Court No. 09-00216**
**Public Version**

## OPINION

[The court sustains the U.S. Department of Commerce's Remand Results.]

Dated: August 5, 2010

*Riggle & Craven* (*David J. Craven*), for Plaintiffs.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Antonia R. Soares*); *Ahran Kang McCloskey*, Attorney-International, Of Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for Defendant.

*Mondial Trade Compliance Services & Solutions Inc.* (*Jeffrey S. Levin*), for Defendant-Intervenor.

Barzilay, Judge:  This case returns to the court following a partial remand of *1-*

*Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China: Final*

*Determination of Sales at Less Than Fair Value*, 74 Fed. Reg. 10,545 (Dep't Commerce Mar. 11, 2009) ("*Final Determination*").  On remand, the court instructed the U.S. Department of Commerce ("Commerce" or "the Department") to reconsider two aspects of its antidumping duty calculation:  (1) "whether Commerce corroborated the adverse facts available rate upon which it relied in calculating the separate rate" in its determination and (2) "whether Commerce used the proper financial ratios and the proper surrogate value for Phosphorous Trichloride and steam in calculating the adverse facts available rate Commerce used as a basis for the separate rate."  *Changzhou Wujin Fine Chem. Factory Co. v. United States*, No. 09-00216 (CIT Feb. 8, 2010) (ordering partial remand of *Final Determination*) ("*Remand Order*").

On May 3, 2010, Commerce filed its remand results with the Court.  The Department found that it could not corroborate the original adverse facts available ("AFA") rate used to calculate the separate rate,[1] because the weighted-average United States price ("U.S. price") of the mandatory respondent had [[        not fallen        ]] between the investigation's preliminary determination, *1-Hydroxyethylidene-1, 1-Diphosphonic Acid From the People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination*, 73 Fed. Reg. 62,470 (Dep't Commerce Oct. 21, 2008), and the *Final Determination*, while the mandatory respondent's weighted-average normal value

---

[1] Commerce presumes that all companies in a non-market economy operate under state-control.  However, a company that demonstrates de jure and de facto independence from government control may qualify for a "separate rate" from that of the country-wide rate assessed against other firms operating within the non-market economy.  *Royal United Corp. v. United States*, Slip Op. 10-71, 2010 Ct. Int'l Trade LEXIS 73, at *3-4 n.3 (June 25, 2010).

[[    changed    ]].[2] *Final Results of Redetermination Pursuant to Court Order*, A-570-934

(Dep't Commerce Apr. 30, 2010) ("*Remand Results*") at 2, 5.  Consequently, Commerce

calculated a revised AFA rate based upon the average unit value from a questionnaire response of

BWA Water Additives U.S., LLC ("BWA"), a non-cooperative, non-selected respondent from

the investigation.  *Id.* at 6.  Commerce adjusted this average unit value to account for an industry-

standard seven percent sales commission deduction to produce the U.S. price.  *Id.*  It

subsequently compared this price to the weighted-average normal value calculated for the

mandatory respondent, resulting in a new AFA rate of 30.94%.  *Id.*  Because the revised AFA

rate relied on information obtained during the investigation, the Department determined that it

did not require corroboration.  *Id.*  Commerce then calculated a revised separate rate by averaging

the revised AFA rate and the zero rate calculated for the mandatory respondent in the *Final

Determination*, producing a rate of 15.47%.  *Id.* at 7.[3]

       Plaintiffs Changzhou Wujin Fine Chemical Factory Co., Ltd., and Jiangsu Jianghai

Chemical Group Co., Ltd., (together, "Plaintiffs") contest the *Remand Results* on several

grounds.  First, they claim that Commerce inappropriately recalculated the U.S. price, because no

party challenged its accuracy during the administrative process and because the *Remand Order*

---

     [2] In the antidumping context, the normal value of the subject merchandise is the price of
that merchandise as sold for consumption in the exporting country at a time reasonably
corresponding to that of the sale of the merchandise in the United States.  19 U.S.C.
§ 1677b(a)(1)(A)-(B)(i).  The antidumping duty margin is the amount by which the normal value
of the subject merchandise exceeds its export price, i.e., U.S. price.  *Id.* § 1673.

     [3] Because the Department calculated the revised AFA rate using financial ratios and
surrogate values for phosphorous trichloride and steam different from those used to determine the
original rate, the Department correctly determined that it need not address the second issue in the
*Remand Order*.  *Remand Results* at 7-9.

"did not provide the Department the leeway to reconsider" the figure.  Pls. Comments 4.

Plaintiffs next assert that Commerce improperly adjusted BWA's average unit value to account

for an industry-standard seven percent commission, an adjustment that affected the value of the

new U.S. price.  Pls. Comments 6-7.  Finally, Plaintiffs contend that the Department acted

contrary to law when it used only the average unit value of BWA to recalculate the U.S. price.

Pls. Comments 7-13.  For the reasons stated below, Plaintiffs' arguments fail.

## I. STANDARD OF REVIEW

The court grants "tremendous deference" to Commerce's final antidumping

determinations due to the "technical" and "complex" economic and accounting decisions

involved, for which the Department "possess[es] far greater expertise than [the Court]."  *Fujitsu*

*Gen. Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (quotation marks & citation

omitted); *accord Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1367 (Fed. Cir.

1999).  The court only will disturb a determination "unsupported by substantial evidence on the

record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence on the record constitutes "less than a preponderance, but more than a

scintilla."  *Novosteel SA v. United States*, 25 CIT 2, 6, 128 F. Supp. 2d 720, 725 (2001)

(quotation marks & citation omitted), *aff'd*, 284 F.3d 1261 (Fed. Cir. 2002).  The requisite proof

amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion" in light of the entire record, including "whatever fairly detracts from the

substantiality of the evidence."  *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir.

1984) (quotation marks & footnote omitted).  This standard necessitates that the Department

thoroughly examine the record and "articulate a satisfactory explanation for its action including a

rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks & citation omitted); *accord Bando Chem. Indus., Ltd. v. United States*, 16 CIT 133, 136-37, 787 F. Supp. 224, 227 (1992).  That the court may draw two inconsistent conclusions from the evidence does not preclude Commerce from supporting its determination with substantial evidence.  *Thai Pineapple Pub. Co.*, 187 F.3d at 1365.

To evaluate whether a Commerce determination accords with law, the court applies the two-step test articulated by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*.  467 U.S. 837 (1984).  First, the court determines whether Congress has spoken directly to the issue at hand; if Congress's intent is clear, the court and the Department must "give effect to the unambiguously expressed intent of Congress."  *Id.* at 843 (footnote omitted).  If the court finds the relevant statute ambiguous or silent with respect to the specific issue, it must defer to the Department's interpretation as long as it is reasonable.  *See id.*  This deference extends to technical methodologies that Commerce may apply to fulfill its statutory mandate.  *Thai Pineapple Pub. Co.*, 187 F.3d at 1365 ("The methodologies relied upon by Commerce in making its determinations are presumptively correct.").

## II. DISCUSSION

### A. Whether Commerce Lawfully Recalculated the U.S. Price

Plaintiffs contend that Commerce exceeded the bounds of the *Remand Order* when it recalculated the U.S. price during its review of the contested AFA rate.  Pls. Comments 3-6.  According to Plaintiffs, the *Remand Order* permitted Commerce to consider *only* whether Commerce corroborated the AFA rate upon which it relied in calculating the separate rate.  Pls.

Comments 5.  Consequently, Plaintiffs assert that the Department "should have continued to use the U.S. price provided by petitioner in the petition."  Pls. Comments 5-6.

Plaintiffs mischaracterize the scope of the *Remand Order*.  In the antidumping context, an antidumping duty margin, including one calculated on the basis of AFA, is the difference between the normal value of the subject merchandise and the U.S. price.  19 U.S.C. § 1673. After the Department determined that it could not corroborate its initial AFA rate on remand, it acted in accordance with law when it used other sources    in this case data collected from BWA during the investigation    to calculate a new U.S. price in order to produce a revised AFA rate. *See id.* § 1677e(b); *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1321 (Fed. Cir. 2010); *PAM S.p.A. v. United States*, 582 F.3d 1336, 1339-40 & n.2 (Fed. Cir. 2009) (holding that "Commerce is permitted to use the information available to it in choosing and supporting an AFA value" (citation omitted)); *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1338-39 (Fed. Cir. 2002) (same); *F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (same); 19 C.F.R. § 351.308(c).  To interpret the *Remand Order* as circumscribing Commerce's ability to choose the proper methodology for its AFA calculation would place an impermissible restraint on the agency's authority.  *Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 29 CIT 1516, 1526, 412 F. Supp. 2d 1330, 1339 (2005) ("[T]he Federal Circuit has disfavored limited remands which restrict Commerce's ability to collect and fully analyze data on a contested issue.") (citing *Am. Silicon Techs. v. United States*, 334 F.3d 1033, 1038-39 (Fed. Cir. 2003)).  The court therefore sustains Commerce's decision to recalculate the U.S. price.

### B. Whether Commerce Erred by Adjusting the U.S. Price for a Sales Commission

Plaintiffs also claim that Commerce inappropriately adjusted the U.S. price in its revised AFA rate calculation to reflect a purported industry-standard [[          ]] sales commission. Pls. Comments 6-7.  Specifically, they point to two factors that they believe invalidate the Department's recognition of the commission:  (1) that the only individually investigated entity did not pay this commission and (2) that "[t]he only evidence of the existence of Commissions . . . was set forth in the Antidumping Investigation Initiation Checklist" and linked to two subject importers "controlled by petitioner."  Pls. Comments 6-7.  Accordingly, Plaintiffs insist that no evidence on the record supports Commerce's finding that the commission exists as an industry practice.  Pls. Comments 7.

Substantial evidence on the record demonstrates that this contention lacks merit. Although the Department found that the only individually investigated entity did not pay the commission during the period of review, *see Remand Results* at 19, that finding neither speaks to industry practice as a whole, nor nullifies the record affidavit provided by the petitioner from an industry source stating that "a 7% commission rate is typical . . . *for the industry*."  Pls. Pub. App. Tab 3 at 2 (quotation marks omitted) (ellipses in original) (emphasis added).  Moreover, Plaintiffs point to nothing on the record that undermines the affidavit's veracity.  The court therefore finds that Commerce supported the commission adjustment to its U.S. price calculation with substantial evidence.  *See Atl. Sugar, Ltd.*, 744 F.2d at 1562.

### C. Commerce's Use of BWA's Average Unit Value to Calculate the Revised AFA and Separate Rates

Finally, Plaintiffs offer a host of reasons to show that Commerce acted contrary to law when it used the average unit value from a single uncooperative respondent, BWA, to calculate the revised AFA and separate rates.  First, they aver that the Department erroneously chose BWA's data solely to obtain a positive separate rate and, instead, should have used data from another uncooperative respondent, which would have produced a separate rate of zero.  Pls. Comments 7-9.  Second, Plaintiffs insist that BWA's "aberrational and unreliable" data "do[] not reflect commercial reality."  Pls. Comments 9.  More specifically, they argue that the "whole" or "round" numbers in BWA's responses appear inaccurate, especially because the Department could not verify the figures due to BWA's failure to cooperate.  Pls. Comments 10-11.  Finally, Plaintiffs state that if the court finds that Commerce did not err in using BWA's data, Commerce also must use data from another uncooperative respondent so that "the data will reflect commercial reality."  Pls. Comments 11-12.

Plaintiffs' arguments have no basis in law.  When Commerce used BWA's data, rather than that of another uncooperative respondent, it complied with the law and its longstanding accepted methodologies for determining AFA and separate rates.  Commerce customarily selects "the highest rate on the record of [a] proceeding"   in this case BWA   to calculate the AFA rate so that a "party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."  *Remand Results* at 15 (citing *Certain Frozen Warmwater Shrimp from Brazil: Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 73 Fed. Reg. 39,940, 39,942-43 (Dep't Commerce July 11, 2008); *Brake Rotors From the People's Republic*

*of China:  Final Results and Partial Rescission of the Seventh Administrative Review; Final*

*Results of the Eleventh New Shipper Review*, 70 Fed. Reg. 69,937, 69,939-40 (Dep't Commerce

Nov. 18, 2005)) (quotation marks omitted); *see PAM S.p.A.*, 582 F.3d at 1339-40 & n.2; *F.Lli de*

*Cecco di Filippo Fara S. Martino S.p.A.*, 216 F.3d at 1032; *Mannesmannrohren-Werke AG v.*

*United States*, 23 CIT 826, 851, 77 F. Supp. 2d 1302, 1323 (1999).  Likewise, Commerce

followed its customary practice when it calculated the separate rate by averaging the revised AFA

rate with the zero rate of the mandatory respondent.  *Remand Results* at 7; *see* 19 U.S.C.

§ 1673d(c)(5)(B) ("If the estimated weighted average dumping margins established for all

exporters and producers individually investigated are zero or de minimis margins . . . , the

[Department] may use any reasonable method to establish the estimated all-others rate . . . ."); *see*

*also KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010); *Notice of Preliminary*

*Determination of Sales at Less Than Fair Value and Postponement of Final Determination:*

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea*, 73 Fed. Reg. 5794, 5800

(Dep't Commerce Jan. 31, 2008).  Moreover, Plaintiffs' complaints about the reliability and

accuracy of BWA's data suggest that Commerce had a duty to corroborate the firm's

submissions.  The Department has no such duty.  *See* § 1677e(c) ("When [Commerce] . . . relies

on *secondary information rather than on information obtained in the course of an investigation*

or review, [Commerce] . . . shall, to the extent practicable, corroborate that information . . . .");

§ 351.308(c)-(d).  Because the agency acquired the data contained in BWA's questionnaire and

response during the investigation, the Department properly used the uncorroborated information

to calculate the AFA rate.  *See* § 1677e(c).

Finally, Plaintiffs fail to demonstrate that the BWA data does not reflect commercial reality. BWA's average unit value represents approximately [[a large portion]] of all subject merchandise sales in the United States during the period of investigation. *Remand Results* at 18. Because this value substantially reflects the market of the subject merchandise, the court cannot find BWA's data to lie outside the realm of commercial reality, let alone instruct the Department to use unverified data from an additional uncooperative respondent to make its calculations. *See Ta Chen Stainless Steel Pipe, Inc.*, 298 F.3d at 1339-40; *see also KYD, Inc.*, 607 F.3d at 765-67. In sum, the court sustains the Department's use of BWA's average unit value in its AFA and separate rate calculations.

### III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Department's *Remand Results* are **SUSTAINED**; it is further

**ORDERED** that Plaintiffs shall submit their reply brief for the case-in-chief no later than August 20, 2010; and it is further

**ORDERED** that in their reply brief, Plaintiffs shall concisely explain what active claims remain in their Motion for Judgment on the Agency Record. More specifically, Plaintiffs must note which issues have not been rendered moot by the *Remand Results* and this opinion, citing to the relevant statutory and jurisprudential authorities.

Dated:   August 5, 2010                              /s/ Judith M. Barzilay
         New York, New York                          Judith M. Barzilay, Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____        By: _____
                                              Deputy Clerk