Slip Op. 14-25

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHANGZHOU WUJIN FINE CHEMICAL FACTORY CO., LTD., and JIANGSU JIANGHAI CHEMICAL GROUP, LTD., | |
| Plaintiffs, | Before: Judith M. Barzilay, Senior Judge |
| v. | Consol. Court No. 09-00216 |
| UNITED STATES, | |
| Defendant, and | |
| COMPASS CHEMICAL INTERNATIONAL, LLC, | |
| Defendant-Intervenor. | |

**OPINION and ORDER**

[Motion for reconsideration denied.]

Dated: February 28, 2014

*Riggle & Craven* (*David J. Craven*), for Plaintiffs.

*Stuart F. Delery*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Antonia R. Soares*); *Whitney M. Rolig*, Of Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for Defendant.

*Levin Trade Law, P.C.* (*Jeffrey S. Levin*), for Defendant-Intervenor.

BARZILAY, Senior Judge:  Consolidated Plaintiff Jiangshai Jiangsu Chemical Group, Ltd. ("Jiangsu") moves under USCIT Rule 59 for reconsideration of the court's opinion issued

on October 2, 2013. *See Changzhou Wujin Fine Chem. Factory Co. v. United States*, 37 CIT __, 942 F. Supp. 2d 1333 (2013). The court sustained Commerce's decision to assign an above *de minimis* separate rate to Jiangsu given the limitations presented by the administrative record. Jiangsu, however, claims that the court (1) overlooked data and information about the respondents that suggests separate rate respondents are entitled to a 0% rate; and (2) discounted certain quantity and value data indicating that separate respondents are entitled to a 0% rate. For the reasons set forth below, Jiangsus's motion is denied.

Granting a motion for reconsideration pursuant to USCIT Rule 59 rests within the sound discretion of the court. *Target Stores v. United States*, 31 CIT 154, 156, 471 F. Supp. 2d 1344, 1346-47 (2007). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Royal Thai Gov't v. United States*, 30 CIT 1072, 1074, 441 F. Supp. 2d 1350, 1354 (2006) (quotations and citation omitted). A motion for reconsideration serves as "a mechanism to correct a significant flaw in the original judgment . . . ." *United States v. UPS Customhouse Brokerage, Inc.*, 34 CIT __, ___, 714 F. Supp. 2d 1296, 1301 (2010) (quotations and citation omitted). It does not, however, afford a losing party an opportunity "to repeat arguments or to relitigate issues previously before the court." *Id.* "Importantly, the court will not disturb its prior decision unless it is 'manifestly erroneous.'" *Starkey Labs., Inc. v. United States*, 24 CIT 504, 505, 110 F. Supp. 2d 945, 947 (2000) (citation omitted).

Jiangsu has not established that the court committed a clear error. Instead, Jiangsu is attempting to relitigate issues that have already been decided in the court's original decision. The court did not overlook data or the "nature" of respondents as described by Jiangsu. Pl. Br. 3. To the contrary, the court considered that data and concluded that it did not support the outcome

sought by Jiangsu (*i.e.*, a 0% dumping margin).  The court concluded that Commerce's inferences and assumptions about Kewei's lack of participation were reasonable.  More specifically, the court concluded that it was reasonable to infer that had Kewei (a non-cooperating mandatory respondent) participated in the investigation, it would have received an actual dumping rate (with no built in increase to deter non-compliance) greater than 0%.  The court cited relevant authority supporting such an inference and had no authority before it supporting Jiangsu's preferred interpretation.  The court, therefore, sustained Commerce's decision to select Kewei's above *de minimis* rate as the separate rate for Jiangsu and the other separate rate respondents.  As noted in the opinion, this is the preferred methodology under the statute.

Likewise, the court did not overlook or discount the Q&V data because it was unverified.  Pl. Br. 4.  It is not a question of whether the Q&V data is verified or unverified.  That is not outcome determinative.  The court concluded that it could not endorse Jiangsu's separate rate calculation, which relies on Q&V data cobbled together with other pricing data, to arrive at a rate of 0%.  For the court to embrace Jiangsu's separate rate calculation and reject Commerce's chosen methodology, Jiangsu must demonstrate that its proposed calculation is the only reasonable outcome on this administrative record.  *See Allied Tube and Conduit Corp. v. United States*, 24 CIT 1357, 1371–72, 127 F. Supp. 2d 207, 220 (2000) ("Plaintiff, therefore, must demonstrate that it presented Commerce with evidence of sufficient weight and authority as to justify its factual conclusions as the only reasonable outcome.").  The court is not convinced that Jiangsu's separate rate calculation yields a more representative rate.  Jiangsu's reliance on Q&V data is misplaced.  Q&V data is typically used to identify the largest volume producer in selecting mandatory respondents, not to calculate dumping margins.  *See* 19 U.S.C. § 1677f-

1(c)(2)(B); *see also Pakfood Public Co., Ltd. v. United States*, 34 CIT __, __, 724 F. Supp. 2d 1327, 1336 n.13 (2010).  Contrary to Jiangsu's claims, there is not enough data to justify a separate rate of 0%.

The problem in this case is a lack of pricing data at the investigation stage of the administrative proceeding, where Commerce relies on the participation of the mandatory respondents to provide information about their pricing practices.  Where, as here, two mandatory respondents are selected and one cooperates (and receives a *de minimis* rate) and the other fails to cooperate (and receives an AFA rate), Commerce is left with very little pricing information to calculate a separate rate.  The uncooperative respondent will oftentimes drop out of the investigation before submitting its pricing data.  Accordingly, there is margin specific pricing information for the cooperative respondent but limited margin specific information for the uncooperative respondent.  Separate rate respondents in such a situation do not automatically get the benefit of the cooperative mandatory respondent's *de minimis* dumping margin simply by qualifying for a separate rate.  The statute does not contemplate such a policy.  Separate rate respondents, therefore, must avail themselves of potential remedies at the administrative level or accept the risk of receiving a separate rate derived from an undeveloped administrative record.  That is what happened here.

Accordingly, it is hereby

**ORDERED** that Jiangsu's motion for reconsideration is denied.

Dated: February 28, 2014                                                       /s/ Judith M. Barzilay
       New York, NY                                                           Judith M. Barzilay, Senior Judge